CONSOLIDATED RENDERING COMPANY *v.* THE STATE OF VERMONT, BY CLARKE C. FITTS, ATTORNEY GENERAL.

ERROR TO THE SUPREME COURT OF THE STATE OF VERMONT.

No. 364.   Argued December 3, 4, 1907.—Decided January 6, 1908.

Whether a notice to produce books and papers is broader than the state statute provides for is not a Federal question.

So long as an opportunity to be heard is given to the party objecting to a notice to produce books and papers, before the proceeding to enforce such production is closed, due process of law is afforded, and if the state court has construed the statute providing for such production to the effect

that objections raised before a grand jury must be reported to the court for action, there is opportunity to be heard.

It is within the power of the State, and due process of law is not denied thereby, to require a corporation doing business in the State to produce before tribunals of the State books and papers kept by it in the State, although at the time the books may be outside of the State.

Nothing in the Federal Constitution prohibits a State from conferring judicial functions upon non-judicial bodies.

A corporation required to produce books and papers cannot refuse to produce any of them on the ground that they might incriminate it. It is for the court, after an inspection, to determine the sufficiency of the objection and what portion, if any, of the books and papers produced should be excluded.

In this case, the notice, given under a state statute, to produce books and papers did not amount to an unreasonable search or seizure. *Adams* v. *New York,* 192 U. S. 585. *Quære* and not decided, whether the Fourteenth Amendment has made the provisions of the Fourth and Fifth Amendments immunities and privileges of citizens of the United States of which they cannot be deprived by state action.

An objection that a notice to produce books and papers is too broad cannot be urged against the validity of the order adjudging the party refusing to comply guilty of contempt. *Hale* v. *Henkel,* 201 U. S. 43. Nor is a notice to produce too broad if, as in this case, it is limited to books and papers relating to dealings with certain specified parties between certain specified dates.

If the person producing the books and papers is entitled, under the general law of the State, to compensation as a witness, the failure of the statute requiring the production of the books and papers of corporations to provide compensation to the corporation itself for the time, trouble and expense of such production does not amount to taking private property without compensation.

A state statute providing for the production of books and papers by corporations does not deny to corporations the equal protection of the laws; such a classification is a proper one.

The statute of Vermont of October 9, 1906, providing for the production of their books and papers by corporations before courts, grand juries and other tribunals, and punishing corporations failing to comply therewith as for contempt, is not unconstitutional as depriving corporations of their property without due process of law, or as denying them the equal protection of the laws, or as conferring judicial functions on non-judicial bodies, or as taking private property for public use without compensation, or as constituting unreasonable searches and seizures or requiring corporations to incriminate themselves.

66 Atl. Rep. 790, affirmed.

THIS writ of error brings up for review a judgment of the

Supreme Court of the State of Vermont, affirming a judgment of the County Court of the County of Chittenden, adjudging the plaintiff in error, a corporation, hereinafter called the company, in contempt and fining it $3,000, for the collection of which it was ordered that execution should issue.

The company in due form was served in Vermont with a notice to produce certain described books and papers before the grand jury sitting at Burlington, in that State. The notice was given pursuant to the provisions of a statute passed by the General Assembly of the State, October 9, 1906. No. 75 Laws, p. 79. That statute provided for the service upon a corporation doing business in the State, whether organized under its laws or those of another State or country, of a notice to produce books and documents before any court, grand jury, etc., which contained any account or information concerning the subject of inquiry before the tribunal, acting under the authority of the State, and which books, etc., have at any time been made or kept within the State of Vermont, and were within the custody or control of the corporation in that State or elsewhere at the time of the service of the notice upon it. Such corporation, when notice to the above effect is served upon it, is, by the statute, directed to produce the books and papers as required. The notice is to be issued from the court or tribunal before whom the papers are required to be produced, and a general description of what is required is to be given in the notice. If the corporation, without reasonable cause, neglects or refuses to comply, "it may be punished as for contempt by the court having jurisdiction of the premises to punish for the contempt. Execution may issue for the collection of such fine as may be imposed for such contempt."

This company was doing business at Burlington, Vermont, under a certificate from the Secretary of State, certifying that it had complied with all the requirements of the law authorizing it to do business in the State. On the seventeenth of October, 1906, the grand jury was in session at Burlington,

and had been investigating a complaint which had been made
against certain individuals who were members of the Vermont
Cattle Commission, the complaint being that such persons, or
one of them, had unlawfully sold diseased meat for food pur-
poses at Burlington. In order to continue the investigation
the grand jury had caused a notice, under the above statute,
to be served upon the company, directing it to produce certain
books and papers, described in such notice, before the grand
jury on the seventeenth of October, 1906. On the day named
a person, representing the company, appeared before the grand
jury and produced some books of account and other data, but
failed to produce others which were described in the notice,
and which it was therein directed to produce. The grand jury
reported the facts to the County Court, stating in the report
that the company had kept books which would have shown
material facts for the purpose of the investigation, but had
not produced them, as required in and by the notice, and that
they were necessary for the further pursuit of the inquiry.
The Attorney General at the same time filed a petition to the
court containing, in substance, the same facts, and asked that
the company should be proceeded against for contempt. The
County Court thereupon, on the nineteenth of October, 1906,
made an order to show cause why the company should not be
punished as for a contempt in failing to produce such books
and papers. Upon the return of the order the company ap-
peared by counsel and made a motion to dismiss the proceed-
ing on the ground that the memoranda and papers called for
in the notice were not legal and material evidence before the
grand jury, and also because it was sought by the notice to
produce, and by the other proceedings to compel the company
to bring into the State of Vermont, before the grand jury,
papers which might tend to criminate the company and render
it liable to criminal prosecution, contrary to the provisions of
the Fourth, Fifth and Fourteenth Amendments to the Con-
stitution of the United States. Accompanying this motion
to dismiss was the affidavit of counsel, in which he stated that

the papers and memoranda which the company had failed to produce before the grand jury would, if produced in evidence before the jury, tend to criminate the company and render it liable to criminal prosecution. The company also answered and admitted that it had kept at Burlington, in Vermont, such papers as were described in the notice to produce, but that on August 20, 1906, all such books and papers were sent to the main office of the company at Boston, Massachusetts, for the purpose of examination and verification, and that after it was made, and long before the service of the notice, such papers or memoranda as were not produced before the grand jury had been destroyed at Boston. The State took issue upon the averments of the answer.

Upon the hearing before the court one of the company's agents testified that the papers had been destroyed in Boston because they were of no consequence, and there was nothing in them to incriminate anybody.

The court, for reasons which it stated, found that the papers wanted were material to the inquiry which the grand jury was making, and that without their presence it was impossible to proceed to any effect with the investigation. It further found, upon all the evidence before it, that the books and papers had been in possession of the company at the time they were taken away from the State, and the court said that it failed to find that the papers were destroyed, and that it also failed to find that they were not then in the custody and control of the company so that it could produce them, and that "thus failing to find, we find them guilty of contempt." This judgment was affirmed by the Supreme Court of Vermont. 66 Atl. Rep. 790.

*Mr. Freedom Hutchinson* and *Mr. Albert S. Hutchinson* for plaintiff in error:

The notice to produce was in excess of the authority granted by the statute, and was invalid.

Inflicting a fine upon the plaintiff in error for failure to obey

an invalid and unauthorized order deprived it of property without due process of law.

The statute is a highly penal one. A corporation failing to comply with a proper and lawful notice is subject to punishment for contempt and may also be enjoined from longer doing business in Vermont. The whole proceeding was a summary one, and the jurisdiction of the court to act depended upon a strict compliance with the statute.

Since the statute was not complied with, all the proceedings here taken were null and void, and the plaintiff in error was adjudged in contempt without due process of law. *Thatcher* v. *Powell*, 6 Wheat. 119. See also *Ex parte Fisk*, 113 U. S. 713; *Ex parte Rowland*, 104 U. S. 604; *Ex parte Ayers*, 123 U. S. 443; *Ex parte Sawyer*, 124 U. S. 200; *Ex parte Burrus*, 136 U. S. 586; *Re Bonner*, 151 U. S. 242.

Neither statute nor notice to produce afforded the plaintiff in error an opportunity to present in court reasons why the writings demanded should not be produced.

The notice to produce which could be issued under the statute by a non-judicial body in effect pronounced an *ex parte* judgment on the plaintiff in error without hearing or notice and denied due process of law. *Hovey* v. *Elliott*, 167 U. S. 409; *Holden* v. *Hardy*, 169 U. S. 366, 389, 390; *Roller* v. *Holley*, 176 U. S. 398.

Where the *subpœna duces tecum* requires appearance and the production of documents in a place other than open court, the witness has a right to have the question whether he shall answer or produce passed upon by the court, with opportunity for defense, and an order of the court to produce before he is in contempt. *Hale* v. *Henkel*, 201 U. S. 43, 80; *Interstate Commerce Com.* v. *Brimson*, 154 U. S. 447, 479. See also *Counselman* v. *Hitchcock*, 142 U. S. 547; *Brown* v. *Walker*, 161 U. S. 591; *Interstate Commerce Commission* v. *Baird*, 194 U. S. 25; *Ballman* v. *Fagin*, 200 U. S. 186; *Nelson* v. *United States*, 201 U. S. 92.

This statute is an attempt by the State to limit a corporation

in the complete dominion and control of its property situated in another State, although the corporation is not organized under her laws and is not personally within her jurisdiction. The sovereign powers of a State cannot be exercised beyond her borders. *Union Refrigerator Co.* v. *Kentucky,* 199 U. S. 194; *Buck* v. *Beach,* 206 U. S. 392; *Allgeyer* v. *Louisiana,* 165 U. S. 578, 592; *N. Y., L. E. & W. R. R. Co.* v. *Pennsylvania,* 153 U. S. 628; *Mississippi &c. Co.* v. *Pennsylvania,* 2 Black, 485.

The statute attempts to confer judicial functions upon non-judicial bodies, in violation of the Fourteenth Amendment.

The powers bestowed are judicial in their character which cannot be exercised by the legislature itself, much less delegated to a non-judicial body. *Kilbourn* v. *Thompson,* 103 U. S. 168. See also *In re Pacific Railway Comm.,* 32 Fed. Rep. 241, 253.

The statute and notice required the plaintiff in error to produce writings which tended to incriminate it, without extending immunity against criminal prosecution. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Ballman* v. *Fagin,* 200 U. S. 186.

Even if the notice had contained an order for the plaintiff in error to appear before the grand jury, no question of law in reference to self-incrimination could properly have been raised before that body. *Ballman* v. *Fagin,* 200 U. S. 186; *Ex parte Wilson,* 39 Tex. Crim. Rep. 630.

The statute, since it contains no immunity clause, is in plain contravention of article X of the Vermont constitution, which is substantially the same as the Fifth Amendment to the United States Constitution. *Counselman* v. *Hitchcock,* 142 U. S. 547; *Emery's Case,* 107 Massachusetts, 172; *State ex rel. Attorney General* v. *Simmons & Co.,* 109 Missouri, 118; *In re Cullinan,* 82 App. Div. (N. Y.) 445. See also *Ex parte Clarke,* 103 California, 352; *Ex parte Cohen,* 104 California, 524; *Lamson* v. *Boyden,* 160 Illinois, 613; *Ex parte Carter,* 166 Missouri, 604; *Smith* v. *Smith,* 116 N. Car. 386; *People* v. *Forbes,* 143 N. Y. 219; *People* v. *O'Brien,* 176 N. Y. 351; *Logan* v. *Railroad Co.,* 132 Pa. St. 403, 408; *United States* v. *Lead Co.,* 75 Fed. Rep. 94.

For the same reason, the statute is in conflict with the Fourteenth Amendment which prohibits the infringement of fundamental rights by state action, whether legislative, executive or judicial. The right to be protected against self-incrimination is a fundamental right so protected. *Boyd* v. *United States*, 116 U. S. 605, 631.

The statute and notice to produce authorized an unreasonable search and seizure of the private books and documents of the plaintiff in error. *Boyd* v. *United States*, 116 U. S. 616; *Hale* v. *Henkel*, 201 U. S. 43. See also *In re Pacific Railway Comm.*, 32 Fed. Rep. 241; *Ex parte Clarke*, 103 California, 352; *Lester* v. *People*, 150 Illinois, 408; *Ex parte Brown*, 72 Missouri, 143; *State* v. *Davis*, 117 Missouri, 614; *Corson* v. *Hawley*, 82 Minnesota, 204, 214; *Newberry* v. *Carpenter*, 107 Michigan, 567.

The statute provides no compensation for the time, trouble and expense imposed upon a corporation in a foreign State or country of collecting and sending the documents demanded to the State of Vermont. Such a requirement is, in substance, a taking of property without just compensation, and, furthermore, the taking is not in Vermont, but outside her limits, where the expense is incurred and the labor performed. *Chicago &c. Ry. Co.* v. *Illinois*, 200 U. S. 561; *Mo. Pac. Ry. Co.* v. *Nebraska*, 164 U. S. 403; *Chicago Ry. Co.* v. *Chicago*, 166 U. S. 226.

The statute is confined in its operation to corporations. An arbitrary classification is thus established, and the plaintiff in error is deprived of the equal protection of the law secured by the Fourteenth Amendment. The classification created by this statute is a purely arbitrary one and in conflict with the principles laid down by this court in *Gulf &c. Ry.* v. *Ellis*, 165 U. S. 150.

Where evils sought to be remedied are incident to individuals as well as corporations, laws applicable only to corporations are clearly unconstitutional. *Johnson* v. *Goodyear Mining Co.*, 127 California, 4; *Quarries Co.* v. *Bough*, 80 N. E. Rep. 529 (Ind. 1907); *Ballard* v. *Mississippi Cotton Oil Co.*, 81 Mississippi,

507, 569. See also *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540.

*Mr. Clarke C. Fitts*, Attorney General of the State of Vermont, for defendant in error:

Where a witness is within the jurisdiction of the court issuing the subpœna, he may be compelled to produce books and papers, if they are within his control, though the physical location thereof may at the time be without the jurisdiction. *Bank* v. *State Bank*, 3 Cliff. 201; Wigmore on Evidence, 2200.

The plaintiff in error resided in Maine, but it was doing business in Vermont, and was present in Vermont. *Railroad Co.* v. *Koontz*, 104 U. S. 11, 12; *Blake* v. *McClung*, 172 U. S. 258, 261; *Insurance Case* v. *Francis*, 11 Wall. 210.

The question whether the notice in its scope goes beyond the statute and as to whether the books and papers called for would be legally admissible is one for the state court alone.

It is within the established power of the State to prescribe the evidence which is to be received in the courts of its own government. *Adams* v. *New York*, 192 U. S. 599; *Fong Ting* v. *United States*, 149 U. S. 698, 729.

The requirement of the production of books and papers did not compel the company to incriminate itself. *Adams* v. *New York*, 192 U. S. 597.

Law in its regular course of administration through courts is due process, and when secured by a law of the State, the constitutional requirement is satisfied, and due process is so secured by laws operating on all alike. *Leeper* v. *Texas*, 139 U. S. 462; *Kent's Commentaries*, vol. 2, p. 13; *Marchant* v. *Railroad Co.*, 153 U. S. 390.

A corporation may be punished for contempt as well as an individual person. *People* v. *Railroad Co.*, 20 How. Pr. (N. Y.) 358.

Where a foreign corporation is doing business in another State, it is proper to punish a contempt by a fine as well against the corporation itself as the subordinate agents found within

its jurisdiction. *United States* v. *Railroad Co.*, 6 Fed. Rep.
237.

MR. JUSTICE PECKHAM, after making the foregoing state-
ment, delivered the opinion of the court.

We take the findings of fact by the state court as conclusive
upon us. It therein appears that the company was duly
served with a notice (which was in substance a substitute for
a *subpœna duces tecum*) to produce books and papers required,
and that they had not been destroyed, but were then under
its control and custody; that the papers were material evi-
dence upon the subject of inquiry before the grand jury, and
that the company had (with some minor exceptions) omitted
and refused to produce them before that body. The company
had a hearing before the court, and an opportunity was given
it, under the statute, to set up any reasonable cause for its
failure to comply with the requirements of the notice. The
court, after this hearing, found the company guilty of the
contempt charged and fined it accordingly.

The company insists that the proceedings were in violation
of the Constitution of the United States. The objections made
before us were: (1) That the notice to produce was in excess
of the authority granted by the statute, and was therefore
invalid; (2) that neither the statute nor the notice afforded
the company an opportunity to present in court reasons why
the writings demanded should not be produced; (3) that the
effect of the statute is to limit a corporation in the complete
dominion and control of its property situated in another
State, although the corporation is not organized under the
laws of the State of Vermont, and is not personally within
her jurisdiction; (4) that the statute attempts to confer judicial
functions upon non-judicial bodies, in violation of the Four-
teenth Amendment to the Constitution of the United States;
(5) that the statute and notice required the company to produce
writings which tend to incriminate it, without extending im-

munity against criminal prosecution; (6) that the statute and notice authorized an unreasonable search and seizure of the private books and documents of the company; (7) that the statute provided no compensation for the time, trouble and expense imposed upon a corporation in a foreign State or country of collecting and sending the documents demanded to the State of Vermont; and lastly (8) that the statute is confined in its operation to corporations, thus making an arbitrary classification, by which the company is deprived of the equal protection of the law secured by the Fourteenth Amendment.

The first objection made by counsel for the company is not of a Federal nature. Whether the notice to produce was broader than the statute provided for is a question of the construction of the state statute, and of the notice, and the decision of the state court is final on that question.

Counsel insisted before us in discussing the second objection that the failure to give an opportunity to be heard why the books should not be produced deprived it of due process of law guaranteed under the Fourteenth Amendment.. Without discussing the question whether this matter comes within the meaning of due process of law, we may say that the objection to the statute is not borne out by its text. The company had under its provisions, and by the fourth section, full opportunity to show cause before the court why it did not produce the papers, and the Supreme Court of Vermont has held in this case that any objection to the production of the papers made before the grand jury would have raised the question before that body, which it would have been its duty to report to the court for its action. Upon such question the company would have been entitled to be heard, and it was in fact heard before the court previous to any decision by the court regarding the right of the company to withhold the papers. So long as a hearing is given before any proceeding is concluded to enforce the production of the papers, due process of law is afforded. *Simon* v. *Craft*, 182 U. S. 427; *Wilson* v. *Standefer*, 184 U. S.

399, 415; *New Orleans Waterworks Co.* v. *Louisiana,* 185 U. S. 336, 349.

The third objection is without force. It is argued that the statute in this particular denies due process of law to the company, because it authorized the infliction of a fine by the court for failure to perform an act outside the State, ordered by a non-judicial body, and without notice and opportunity for hearing. The last reason has already been answered by showing that a hearing is provided for before any punishment of the company for disobedience to the requirements of the notice to produce can be enforced. There can surely be no illegality in providing that a corporation doing business in the State and protected by its power may be compelled to produce before a tribunal of the State material evidence in the shape of books or papers kept by it in the State, and which are in its custody and control, although for the moment outside the borders of the State. The statute is in no sense a provision as to how the company shall perform its duties and obligations in other States. It directs the company doing business in the State and present therein, by its officers or some of them, to do something which it is entirely competent to do, the purpose of which is to enable the tribunal making the investigation under a state statute to perform its duty.

Fourth. There is no provision in the Federal Constitution which directly or impliedly prohibits a State, under its own laws, from conferring upon non-judicial bodies certain functions that may be called judicial. It is said that the statute, in providing for the production of books and papers, includes not only the court and grand jury, but any tribunal or commission authorized by the State. There is nothing, as we have said, in the Federal Constitution which prevents it.

The fifth objection is also without merit, even upon the assumption that in such a case as this the company could take the objection through the witness. The court simply held that it could not determine whether the objection as to incrimination was valid until the books were produced for in-

spection by the court, though before they were to be used in evidence. If, after that inspection, any portion were found of that character, the court held that such portion would be excluded. As, however, the company failed and refused absolutely to produce any of the books, with some unimportant exceptions, it was adjudged to have failed to show any reasonable cause for such refusal to comply with the requirements of the notice, and it was fined for the contempt. Obviously the company could not by its refusal to produce the books thereby entirely conclude the court from any examination whatever into the sufficiency of the excuses for such nonproduction. Otherwise the company could disobey at its pleasure and so prevent any inquiry into the merits of the excuses. The statute might as well not exist if this were to be permitted.

Sixth. The objection that the notice authorized by the statute amounted to an unreasonable search and seizure of the private books and documents of the company is also not well founded. In *Adams* v. *New York*, 192 U. S. 585, where the question was raised, the court refused to discuss the contention that the Fourteenth Amendment made the provisions of the Fourth and Fifth Amendments to the Constitution of the United States, so far as they related to the right of the people to be secure against unreasonable searches and seizures, and to be protected against being compelled to testify in a criminal case against themselves, privileges and immunities of citizens of the United States of which they could not be deprived by the action of the State, because on an examination of the record the court concluded that there had been no violation of this restriction, either in the unreasonable search and seizure or in compelling plaintiff in error to testify against himself. We are of opinion that there was no violation of such rights in the case before us, and we think it equally unnecessary to decide the question which was left undecided in the *Adams case.*

The objection is also made that the documents were not

described with the particularity required in the description of documents necessary to a search warrant or subpœna, and that it was not a valid paper and created no obligation to obey the notice, which could form no justification for any proceeding for contempt, and was not due process of law. An examination of the notice to produce shows that the requirements of the notice, while quite broad, yet were limited to such books or papers as related to, or concerned, any dealings or business between January 1, 1904, and the date of the notice, October, 1906, with the parties named therein, who were cattle commissioners of the State of Vermont, and which papers were to be used relative to the matter of complaint pending, and then and there to be investigated by the grand jury, in which the persons named in the notice were charged with having unlawfully sold diseased meat for food purposes at Burlington. The notice also gave in detail the dates and amounts of checks and vouchers which the company was required to produce. The company refused to produce the books (with the exceptions stated), and even if the notice had been too broad, the objection cannot be urged as to the validity of the order adjudging the company guilty of contempt. *Hale* v. *Henkel,* 201 U. S. 43. But unless it can be said that the court or grand jury never has any right to call for all the books and papers, or correspondence, between certain dates and certain persons named, in regard to a complaint which is pending before such court or grand jury, we think the objection here made is not well founded. We see no reason why all such books, papers and correspondence which related to the subject of inquiry, and were described with reasonable detail, should not be called for and the company directed to produce them. Otherwise the State would be compelled to designate each particular paper which it desired, which presupposes an accurate knowledge of such papers, which the tribunal desiring the papers would probably rarely, if ever, have. The notice is not nearly so sweeping in its reach as in the case of *Hale* v. *Henkel, supra.*

Seventh. The next objection relates to the claim that the

statute provides no compensation for the time, trouble and expense imposed upon a corporation in a foreign State or country in collecting and sending the documents demanded to the State of Vermont, and that it thereby takes, if enforced, private property for public use without compensation. The prohibition to that effect is found in the Fifth Amendment to the Federal Constitution. Here again we meet the question whether that amendment, because of the subsequent adoption of the Fourteenth Amendment, applies to a state proceeding, but for the reasons already stated we do not find it expedient to discuss it here. We do not say that in any event a witness is entitled to compensation in order to avoid the above constitutional provision, but the Supreme Court in this case has held that the general law of the State in reference to the compensation of witnesses applied to this statute. The answer which the counsel for the company makes is that neither the statute nor the notice required the attendance of any one as a witness, but was merely an order for production for which no compensation was provided, either by the statute or under the general law. But the papers cannot walk into court of themselves, and when they are brought there by virtue of the notice to produce served on the company, and they are given to some person by the company for the purpose of such production, he has a right to be sworn as to the papers which he produces for the purpose of identification, if nothing else, and the state court has held that he is entitled as a witness to compensation.

Lastly, the objection is urged that there is an arbitrary classification in the statute, which is confined to corporations alone, and the company is thereby deprived of the equal protection of the laws secured by the Fourteenth Amendment. There is no improper classification in this regard. It is stated by the state court that prior to the passage of this act there was no adequate provision for compelling the production of books and papers by a corporation, and it was held that the statute was designed for requiring the corporation itself, as

the responsible owner and custodian, to produce the documentary evidence mentioned therein, without the necessity of calling upon bookkeepers, managers or other servants who may, or may not, in fact, have custody or control thereof at the time notice to produce is given, and to place upon the corporation the responsibility of seeing that such evidence called for, if in its control, is produced. There is ample justification for the classification made by the statute.

The judgment of the Supreme Court of the State of Vermont is

*Affirmed.*