**SHOTKIN v. NELSON, Chairman of the War Production Board, et al.**

No. 3068.

Circuit Court of Appeals, Tenth Circuit.

Dec. 13, 1944.

Harry S. Silverstein, of Denver, Colo., for appellant.

Thomas J. Morrissey, U. S. Atty. (Ivor O. Wingren, Asst. U. S. Atty., and George Dexter Blount, Atty., War Production Board, all of Denver, Colo., on the brief), for appellees.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This proceeding arises under the Second War Powers Act of 1942, 50 U.S.C.A. Appendix, § 633.[1] Appellant, Bernard M. Shotkin, by this consolidated appeal seeks to obtain a reversal of an order of the trial court denying him a temporary injunction in case No. 752, and of an order entered in case No. 11,800 requiring him to respond to a subpoena duces tecum, and produce the records required therein for inspection by the Compliance Commissioner of the War Production Board.

Appellant is engaged in the purchase and sale of electric and lighting fixtures and equipment, including fluorescent fixtures, in Denver, Colorado. He conducts his business under the names of Edison Power & Light Company, Chicago Wholesale Merchandise Company, Dison Power & Light Company, the Light Company, and the Shotkin Electric Company. Appellees will be referred to collectively as appellees or the Compliance Commissioner.

Section 2(a) (2) of the Act provides that whenever the President is satisfied that fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, he may allocate such material or facilities in such manner and upon such conditions as he may deem necessary or appropriate in the public interest and to promote the national defense.

Section 2(a) (3) empowers the President to require the keeping of records, the making of reports, the inspection of all books, records and writings, and the furnishing of information by persons or concerns subject to the provisions of the Act. The section further empowers the President to

make all investigations which in his discretion are necessary or appropriate to the enforcement of the provisions of the Act.

Section 2(a) (4) empowers the President to administer oaths, to require by subpoena or otherwise the attendance of and testimony of witnesses, and the production of books and records.

Section 2(a) (8) of the Act authorized the President to set up a department or agency to administer the provisions of the Act. The War Production Board[2] was created for this purpose. In the administration of the Act it may lawfully and constitutionally exercise all the powers that the President himself may exercise under the provisions of the Act.

The business in which appellant is engaged was determined to be essential to the war effort, and allocations of the merchandise in which he dealt were made and priorities were established by the Board under rules and regulations promulgated by it. Order L-78 is a directive which regulates appellant's business. The purpose of this order is to regulate the manufacture, assembly, sale and delivery of fluorescent lighting fixtures. Paragraph (d) of the order provides: "Records. All persons affected by this order shall keep and preserve for not less than two (2) years accurate and complete records concerning inventories, production and sales." Paragraph (e) provides: "Audit and Inspection. All records required to be kept by this order shall, upon request, be submitted to audit and inspection by duly authorized representatives of the War Production Board." After April 14, 1944, these provisions were deleted because their substance was fully covered by the current issue of Priorities Regulation No. 1.

In the administration of his duties under the Act, the Compliance Commissioner sought an examination of appellant's books and records. Appellant refused permission to examine his books. The Compliance Commissioner thereupon issued and served the following subpoena duces tecum upon appellant:

"You are hereby required, that all business and excuses being laid aside, you appear before Roger H. Wolcott, Compliance Commissioner of the War Production Board, in Room 522 Continental Oil Building, in the City and County of Denver, State of Colorado, on July 27, 1944, at

---

[1] Herein referred to as the Act.

[2] Herein called the Board.

10:00 o'clock A. M., of that day, to testify concerning the purchase, use and sale at wholesale and retail of electrical and lighting fixtures and supplies by you, either in your own name or in the names of Edison Power and Light Company, Chicago Wholesale Merchandise Company, Dison Power and Light Company, the Light Company, or The Shotkin Electric Company or in the names of other companies.

"And you are hereby required to bring with you and produce at said time and place all sales invoices, purchase orders, preference rating records, accounts receivable, notes receivable, bookkeeping journals and general ledgers, and all inventories taken in 1943 and particularly the inventories of June 30, 1943 and December 31, 1943, showing the purchase, ownership and sale of electrical and light fixtures and supplies by you and by all and any of the companies above named, during the years 1943 and 1944 . . ."

While numerous assignments of error are presented for consideration of questions arising in the trial of the two cases, the entire controversy centers around the validity of this subpoena, and our opinion will be largely limited to a consideration thereof.

Much space is devoted in appellant's brief, and many authorities are cited in support of the principle that the Constitution protects a citizen against unreasonable searches and seizures. We deem it unnecessary to discuss these authorities or to devote much space to a discussion of this principle. The constitutional immunity against unreasonable searches and seizures and against being required to give evidence against oneself is conceded by all. There is no disagreement between appellant and appellees on this. Neither will it be contended by anyone that the fact that we are engaged in the most titanic struggle of the ages—a struggle upon the outcome of which our very existence depends—takes away from us these constitutional guarantees. On the other hand, objections to a subpoena which fall in the shadowy realm of technicalities and which do not substantially affect constitutional rights must not be permitted to hamstring our war effort and be made the means of evading appropriate regulations adopted to speed the day of victory. In other words, a subpoena or search warrant will not be stricken down unless it substantially violates constitutional rights. The difficulty, as always, comes when we apply these principles to a given state of facts.

Of course a subpoena must have back of it both constitutional and legislative authority. So likewise a citizen has a right to know why the inquiry is made. Also, a subpoena must be kept within the scope of the authority conferred upon the administrative agency and must be sufficiently definite to inform the witness of what is demanded. Furthermore, process to be lawful must confine its requirements within the limits which reason would impose under the circumstances of the case. Whether a subpoena duces tecum should be enforced is in the first instance a question for the trial court, and its decision should not be disturbed on appeal unless it clearly appears it is arbitrary and finds no support in the record. We deem it unnecessary to cite an array of authorities in support of these elemental principles. They find support in all the authorities involving these questions. They are not challenged by any of the parties to this proceeding.

We examine the issues presented by this appeal in the light of these pronouncements. As pointed out above, appellant's business was determined to be essential to the war effort, and fluorescent fixtures were declared essential war material and their sale was subjected to the regulatory powers of the Act. Admittedly, the Compliance Commissioner has authority to administer the provisions of the Act. He has the authority under the Act and under the regulations to inspect all books, records and writings dealing with fluorescent merchandise, to see that records required to be kept are kept, and that the business is kept within the regulations set up under the Act. Under the promulgated regulations it became appellant's duty to permit an inspection of his records upon request by the Compliance Commissioner. Of course he could, under his constitutional right, refuse, as he did, to submit himself to a voluntary investigation, but when he did, the Compliance Commissioner could compel a production of all relevant records by subpoena duces tecum.

There is no merit to appellant's contention that order L—63 exempts his business from the operation of order L—78 and that he therefore may pursue his business free from any war regulations. Order L—63 deals entirely with the regulation of surpluses of businesses subject to the provisions of the Act. The sense of the regula-

tion is that surpluses of those whose total inventory at cost is less than $35,000 are not subject to regulation by order L—63. In nowise can order L—63 be construed as an amendment or limitation upon order L—78. That this is so appears clearly from paragraph (f) of order L—63, which provides that: "This order and all transactions affected thereby are subject to all applicable provisions of priorities regulations of the War Production Board as amended from time to time."

■ We are not impressed with the contention that the subpoena does not inform appellant as to the nature or the purpose of the inquiry. The subpoena quite clearly shows that the investigation concerned the purchase and sale of electrical equipment and supplies. The case of Jones v. Securities and Exchange Commission, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015, upon which appellant relies, and from which he quotes, is not in conflict with this ruling. There the applicant for a permit had filed his registration statement pursuant to the provisions of the Act, and after the Commission had instituted an investigation and had issued a subpoena duces tecum he filed a request to withdraw his application, which was denied by the Commissioner. The Supreme Court held that he had the right as a matter of law to withdraw his application, and that such withdrawal deprived the Commission of jurisdiction to proceed with the inquiry. The only question decided was that the right to compel obedience to the subpoena failed with the loss of the Commission's jurisdiction.

■■ It is urged that appellant was denied due process of law in that the enforcement order was issued without notice and without opportunity to be heard. After the subpoena was issued but before the enforcement order was entered, appellant filed a declaratory judgment action No. 752 in the United States District Court for Colorado, seeking to enjoin further proceedings under the subpoena. The hearing in this case was set for September 26. On September 19 the trial court issued the enforcement order in No. 11,800 in an ex parte proceeding, requiring appellant to produce his books and records before the Compliance Commissioner on September 27. Appellant immediately filed a motion to vacate the enforcement order. Appellant's application for an injunction seeking to enjoin enforcement of the subpoena and his

motion to vacate the enforcement order were heard at the same time. At the conclusion of the arguments, on September 29, 1944, the court denied the application for injunction and also denied the motion to vacate the enforcement order. We think the trial court should have given appellant notice and an opportunity to be heard before the enforcement order was issued. But the error in this respect was cured when the trial court set down for hearing the application for an injunction which was pending at the time the application for an enforcement order was filed and the motion to vacate the enforcement order at the same time. Appellant thus had the benefit of everything he would have had had the original application for the enforcement order been set down for hearing upon notice. This satisfies due process and appellant will not be heard to complain in this respect.

■ It is urged that the subpoena is void because it is too broad, in that it requires the production of all of appellant's books and records. The Supreme Court, in Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 380, 50 L.Ed. 652, uses language which seems to lend support to the contention that one may not be compelled to produce at one time all his books and records even though relevant to the inquiry. A careful reading of the opinion will, however, show that the language of the court was directed to the particular subpoena and to the circumstances of that particular case. The court states: "We do not wish to be understood as holding that an examination of the books of a corporation, if duly authorized by act of Congress, would constitute an unreasonable search and seizure within the 4th Amendment." Subpoenas requiring the production of all documents relative to an inquiry have been consistently sustained by the courts. Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L. Ed. 327, 12 Ann.Cas. 658; Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500; Consolidated Mines v. Securities & Exchange Commission, 9 Cir., 97 F.2d 704.

■ Order L—78 deals with fluorescent fixtures and merchandise. There can be no doubt as to the authority of the Compliance Commissioner to compel the production by subpoena duces tecum of all records, books and papers dealing with such fixtures for examination in a proceeding such as this, instituted under the provisions of the act. The difficulty with the

subpoena in question is that it is not restricted to fluorescent transactions. It is broad enough to compel appellant to submit for inspection every record, book or transaction, whether relating to fluorescent merchandise or other electrical supplies, which are not subject to order L—78. To this extent it violates appellant's constitutional rights against unreasonable searches and seizures, and runs afoul of the mandate of the courts that an administrator may not go outside the provisions of a legislative act, or pry into one's affairs for the mere purpose of a general fishing expedition.

Reversed and remanded, with directions to enter an order denying enforcement of the subpoena duces tecum.