Application of HARRY ALEXANDER, Inc., et al.

No. 11–188.

United States District Court
S. D. New York.

Jan. 3, 1949.

Weisman, Grant & Jaffe, of New York City (John Harlan Amen, Herman L. Weisman and William J. Butler, all of New York City, of counsel), for applicants.

J. Francis Hayden, Sp. Asst. to the Atty. Gen., for the United States.

CLANCY, District Judge.

This is an application made by thirty-five members of New York Electrical Contractors Association, Inc., to quash subpoenas duces tecum purporting to require production by each of them of a mass of papers before a grand jury. The answering affidavit says that the Government has "information indicating possible restraints of trade in the electrical contracting industry which may involve violations of the Antitrust law" and it is the amorphous intangible charge embodied in this guarded language that is to be examined. The applicants have presented their problem to the Court with a lucid factual exposition of their business and their business methods, the nature and number of the records required to be produced and the effect on them and on their business of attempted obedience to the subpoenas. Every fact they state is ignored in the Government's answering affidavit which may be summed up as a series of unsupported conclusions that all the papers called for are essential sometimes, it is said, to investigation and sometimes to prosecution under an imaginary indictment.

The constitution requires that the forced production of documents by subpoena be not unreasonable. Boyd v. U. S., 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652. It was said in McMann v. Securities and Exchange Commission, 2 Cir., 87 F.2d 377, 379, 109 A.L.R. 1445: "The search is 'unreasonable' only because it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it proceeds." The Antitrust Division can hardly take seriously the notion that a grand jury or its successor or successors will ever see any considerable part of the material these applicants are called on to produce. Both grand jurors and prosecutors are human beings and he would be a person of incredible competence and capacity who could contain or absorb any significant fraction of it over a long time. It is sworn to and not contradicted that "one of the thirty-five applicants has 9,600 active contracts and accounts for maintenance alone and that just in its maintenance business it experiences a turnover of 1,000 contracts and accounts per year. The records of this department alone, exclusive of correspondence would require a minimum of fifteen cabinets of four drawers each." This is an inconsiderable part of the intended product of the Government's dragnet. The subpoenas express a studied attempt to include what is incorporated in the imaginative concept of every shred of paper in a contractor's office and to avoid the possible exclusion of anything there. In Brown v. U. S., 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500, can be found a sample of what a proper subpoena calls for when the author must depend for description in classifications. The matter demanded was "probably material" on its face and could readily be located by an intelligent clerk.

The decisions upon which the Government leans are irrelevant to the case of these applicants. The subpoenas in Consolidated Rendering Co. v. Vermont, 207 U.S. 541, 28 S.Ct. 178, 52 L.Ed. 327, 12 Ann.Cas. 658; Norcross v. U. S., 9 Cir., 209 F. 13 and United States v. Invader Oil Corp., D.C., 5 F.2d 715, were coextensive with the definite charges in those cases. Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531, sustained the investigatory

power of the Fair Labor Standards Administrator. Shotkin v. Nelson, 10 Cir., 146 F.2d 402, sustained the War Production Board's authority to examine the books and records for one year of a dealer in essential war material.

The Judge in Matter of Eastman Kodak Co., D.C., 7 F.R.D. 760, had the benefit of three earlier judgments to acquaint him with the nature of what was relevant and proper when he limited the subpoena in accordance with Federal Rules of Criminal Procedure, Rule 17(c), 18 U.S.C.A. We have only the face of the subpoena to serve as a guide.

Items I and II are allowed with the following elisions: After the words "Operating Committee" in the second line of item I, omit everything down to and including "group thereof" in the fifth line. Omit the words "manufacturing, producing" in the eighth line and all that remains in paragraph I after the word "licensing" in the ninth line. Classification No. 23 must be stricken. From paragraph II are stricken classifications D, F, G, H and I. Incorporate in the order items I and II as thus modified. The subpoenas are otherwise vacated and quashed. What has been allowed should reveal some evidence if any exists of any past or present crime of which the applicants possess evidence and serve as a sufficient basis for intelligent process and progress thereafter.