## UNITED STATES v. CREAM PRODUCTS DISTRIBUTING CO., INC.

### No. 8971.

Circuit Court of Appeals, Seventh Circuit.
June 28, 1946.

Arthur R. Seelig, of Chicago, Ill., for appellants.

J. Albert Woll, U. S. Atty., John P. Lulinski, Asst. U. S. Atty., Howard Rooney, Regional Atty., and Morris D. Spiegel, Atty., Office of the Solicitor, U. S. Dept. of Agriculture, all of Chicago, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

KERNER, Circuit Judge.

This appeal involves the War Food Administrator's right to judicial enforcement of a subpoena duces tecum issued in connection with an investigation under Title III of the Second War Powers Act, 1942, § 301, as amended and extended, 50 U.S. C.A. Appendix, § 633.

In an investigation of the utilization of milk solids in the production of frozen dairy foods and mix subject to the provisions of Food Distribution Order 8,[1] the Department of Agriculture learned that appellants had furnished dairy products to various persons engaged in the business of producing frozen dairy foods and mix. Thereupon, investigators for the depart-

[1] By Food Distribution Order 8 (8 Fed. Reg. 953 et seq.) the Secretary of Agriculture restricted the use of milk solids in the production of frozen dairy foods and mix and provided for making such investigations as may be necessary or appropriate to the enforcement or administration of the provisions of the order.

ment requested permission to inspect appellants' records. After being denied permission to examine the records, one Frank A. Gallagher issued a subpoena duces tecum directed to appellant Cream Products Distributing Company to produce certain specified records maintained by the corporation relative to the manufacture, purchase, sale and distribution of dairy products. Appellant Albert A. Bluemke is president of the distributing company. The subpoena was served upon appellants on August 29, 1945, but appellants failed to appear and refused to produce the documents requested.

On September 6, 1945, appellee filed a petition in the District Court for an order upon appellants to show cause why an order should not issue directing appellants to appear and produce the books and records as required by the subpoena duces tecum. The order to show cause was entered ex parte on September 7, 1945. September 20, 1945, appellants, in answer to the petition, moved the court to vacate the order to show cause and dismiss the petition for want of jurisdiction. The District Court, after considering the petition for enforcement, the motion to dismiss and accompanying affidavits filed by both parties, denied the motion to dismiss and entered an order compelling the production of the specified records.

In this court appellants contend that the District Court was without jurisdiction, that the petition failed to show that the appellant company was subject to Food Distribution Order 8, that the subpoena was invalid, and that the immunity clause of the Second War Powers Act was not in conformity with the Fifth Amendment to the United States Constitution.

■ First. It is claimed that no process was issued or served upon appellants, hence the court did not acquire jurisdiction of the person.

It is true that the order to show cause was entered without notice being given to appellants and without service of process. The record, however, discloses that appellants were served by the United States Marshal with a copy of the petition and with a certified copy of the rule to show

cause. The record also shows that appellants filed their motion to dismiss and in support thereof they filed two affidavits and a brief, and a hearing was had on the merits. In such a situation, we think the court acquired jurisdiction over appellants. Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 38 S.Ct. 178, 52 L.Ed. 327, 12 Ann. Cas. 658; Shotkin v. Nelson, 10 Cir., 146 F.2d 402.

■ The point is also made that the subpoena was issued without authority. In substance the argument is that under the Act the President could issue subpoenas only for records required to be kept by regulation and the investigation could be directed only against persons subject to the regulation, and that the President never delegated the subpoena power to the Secretary of Agriculture, citing in support thereof Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895, in which the court held that the authority to delegate the power to issue a subpoena cannot be implied, but must be granted specifically by Congress.

In answer to this point it will be enough to say that under § 2(a) (2) of Title III of the Second War Powers Act, 1942, § 301, as amended and extended, 50 U.S.C.A. Appendix, § 633, the President is given discretionary authority to allocate materials and facilities in order to expedite the prosecution of the war. Sections 2(a) (3) and 2(a) (4) endow him with broad powers of investigation and confer upon him the right, by subpoena, to require the attendance and testimony of witnesses in connection therewith. Section 2(a) (6) provides for the enforcement of subpoenas in the district courts of the United States. Section 2(a) (8) authorizes the President to exercise his authority through such department, agency or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe. Thus it is plain that the President had a clear grant of power from Congress to delegate all the powers conferred upon him in the Act.

By ¶ 1 of Executive Order 9280, 50 U.S.C.A.Appendix, § 601 note, issued December 5, 1942 (7 Fed.Reg. 10179) the President

delegated his powers under the Act to the Secretary of Agriculture, and authorized and directed the Secretary "to assume full responsibility for and control over the Nation's food program. * * * c. Assign food priorities and make allocations of food * * *. d. Take all appropriate steps to insure the efficient and proper distribution of the available supply of food." And by ¶ 8 the President provided that: "The Secretary, in carrying out the responsibilities imposed on him by this Executive Order, may, * * * exercise the following powers in addition to the powers heretofore vested in him. * * * b. The power conferred upon the President by Title III of the Second War Powers Act, 1942, insofar as it relates to priorities and allocations of (1) all food for human or animal consumption or for other use in connection with the food program * * *." By Executive Order 9322, as amended by Executive Order 9334, 50 U.S.C.A. Appendix, § 601 note (8 Fed.Reg. 3807, 5423), effective April 19. 1943, authority to exercise these powers was also vested in the War Food Administrator.

On October 25, 1943, the War Food Administrator and the Secretary of Agriculture issued an order authorizing one Frank A. Gallagher (an attorney in the office of the solicitor for the Department of Agriculture) to sign and issue subpoenas in connection with an investigation relating to the allocation authority of the War Food Administration. This order was amended on June 29, 1945 (10 Fed.Reg. 8183), whereby the actual listing by name of attorneys in the office of the solicitor for the Department of Agriculture to issue subpoenas was eliminated and in lieu thereof, the Secretary of Agriculture and the War Food Administrator designated "all persons now or hereafter employed as attorneys in the Office of the Solicitor" as authorized to sign and issue subpoenas pursuant to the authority of the Act.

A fair reading of the Act and the executive orders issued by the President impels us to the belief that with respect to food, the Secretary of Agriculture was endowed will all the powers and authority possessed by the President, including those of investigation, enforcement and subpoena, and that the Secretary validly redelegated his power of subpoena to Gallagher who issued the subpoena pursuant to such authority.

▉ Second. Appellants argue that the petition contained no allegation that the distributing company was engaged in the manufacture of frozen dairy foods or mix using milk solids as defined by Food Distribution Order 8, and did not allege that appellants had violated any statute, rule or regulation.

The petition alleged that the distributing company sold dairy products to persons producing frozen dairy foods, while the affidavit of Morris Stickgold alleged the transportation by the company of sugar and other materials necessary in the production of frozen dairy foods or mix; that the company admitted to investigators that it had been making a mix to be used in the manufacture of frozen dairy foods; and that its distributing business was almost exclusively that of selling products used in the manufacture of frozen dairy foods.

Section 1401.31(a) (2) of Food Distribution Order 8 states:

"The term 'frozen dairy foods' means any frozen or partially frozen food products (including ice cream, French ice cream, ice milks, milk ices, frozen custards, sherberts, and other similar preparations) containing milk solids and sugar together with stabilizers, extracts, fruits, nuts, coloring, or flavoring materials."

Section 1401.31(a) (3) defines "mix" as follows:

"The term 'mix' means any liquid or dried unfrozen preparation (including ice cream mix, ice cream powders, milk ice mix, ice milk mix, milk shake mix, and other similar preparations), containing milk solids and sugar, that is used directly in the freezing of a frozen dairy food."

Thus, it is apparent that milk solids and sugar are the two basic materials used in the manufacture of frozen dairy foods or mix. In this state of the record we find no merit in appellants' present contention. Moreover, since this is an investigation, the petition need not charge that appellants had violated any statute, rule or regulation. It is enough that the investigation be for a

lawfully authorized purpose, within the power of Congress to command. Oklahoma Press Publishing Co. v. Walling, 66 S.Ct. 494, Bowles v. Baer, 7 Cir., 142 F.2d 787, and Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566.

■ Because the Secretary of Agriculture had issued an order (10 Fed.Reg. 11341), effective September 1, 1945, terminating Food Distribution Order 8, it is claimed that no order requiring any course of conduct on the part of appellants existed when the petition was filed on September 6, 1945. But the termination of Food Distribution Order 8 contained a saving clause for the purpose of sustaining any proceeding with respect to prior violations, hence such termination did not affect the right to issue the subpoena. United States v. Hark, 320 U.S. 531, 536, 64 S.Ct. 359, 88 L.Ed. 290.

■ Third. Appellants assert that since Food Distribution Order 8 relates only to milk solids used in the manufacture of frozen foods, it was improper to compel the production of all records relating to purchases and sales.

We think the assertion is without merit for the reason that by § 2(a) (3) the President is entitled to obtain information and inspect records of any persons and make such investigation as may be necessary or appropriate in his discretion to the enforcement or administration of the Act, and by § 2(a) (4) the President is granted authority to aid his investigative authority by subpoena to require the production of any records "which may be relevant to the inquiry." See also Shreveport Engraving Co. v. United States, 5 Cir., 143 F.2d 222, and Cudmore v. Bowles, 79 U.S.App.D.C. 255, 145 F.2d 697.

■ Appellants also insist that enforcement would permit appellee to conduct a "fishing expedition" and that if they were compelled to produce the books and records as required by the subpoena, their rights secured by the Fourth Amendment would be violated. Hale v. Henkel, 201 U.S. 43,

26 S.Ct. 370, 50 L.Ed. 652; Ellis v. Interstate Commerce Commission, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A. L.R. 786; and Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374. On the facts in the present case, these cases are not in point.

In considering this contention it is well to remember that the appellant company supplied dairy products to other persons and that its books and records are material to establish the purchase of the basic materials from which frozen dairy foods and mix are made by customers amenable to the Act. In this state of the record we think the argument is not sound. Oklahoma Press Publishing Co. v. Walling, supra, and Bowles v. Shawano National Bank, 7 Cir., 151 F.2d 749.

■ Fourth. Appellants argue that no immunity statute can be valid unless it provides absolute immunity, United States v. Monia, 317 U.S. 424, 428, 63 S.Ct. 409, 87 L.Ed. 376, and contend that the immunity clause of the Second War Powers Act (§ 2 (a) (4) ) is too limited and violates the Fifth Amendment; this is so, they say, because it grants immunity from prosecution *and* punishment, and not from prosecution *or* punishment.

We do not deem it necessary to decide that question. It will suffice to say that in our case the only records directed to be produced are those of the appellant corporation. Immunity from prosecution or punishment does not extend to corporations and their records, and an officer of the corporation cannot refuse to produce its records in his possession upon the plea that they will either incriminate him or may incriminate it. Oklahoma Press Publishing Co. v. Walling, supra; Wilson v. United States, 221 U.S. 361, 384, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558; and United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542.

The order of the District Court is affirmed.