In the Matter of INLAND GAS CORPO-
RATION, Debtor.

In the Matter of KENTUCKY FUEL GAS
CORPORATION, Debtor.

In the Matter of AMERICAN FUEL &
POWER COMPANY et al., Debtors.

Nos. 989–B, 991–B, 115–B.

United States District Court
E. D. Kentucky,
Lexington.

April 8, 1961.

**HIRAM CHURCH FORD, Chief Judge.**

The three above entitled proceedings for reorganization under the Bankruptcy Act were begun by an involuntary petition under section 77B filed in this Court against Inland Gas Corporation on October 15, 1935, and a like petition filed against Kentucky Fuel Gas Corporation on the same date. Petitions for reorganization of American Fuel and Power Company and its subsidiaries, Buckeye Fuel Company, Buckeye Gas Service Company, Carbreath Gas Company and Inland Gas Distributing Company were first filed in the United States District Court for the District of Delaware on December 30, 1935, which proceedings were thereafter transferred to this Court.

Since the enactment of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., all the above mentioned proceedings have been carried on in accordance with the provisions of that chapter with the result that a Plan which embraced reorganization of all three of the above-mentioned corporations was finally approved and confirmed by this Court on June 2, 1958, but which did not become effective until the conclusion of the final litigation by denial of certiorari by the Supreme Court on June 6, 1960. Kern v. Columbia Gas System, Inc., 363 U.S. 813, 80 S.Ct. 1246, 4 L.Ed.2d 1154.

Articles I, II, III and IV of the approved Plan contain comprehensive statements of the complicated and apparently hopeless financial condition of each of these companies at the beginning of the proceedings.

The innumerable problems which have given rise to the prolonged litigation which has ensued are disclosed in the following opinions of the Appellate court: In re Inland Gas Corporation et al. (Columbia Gas & Electric Corp. v. Lockhart et al.), 6 Cir., 1937, 91 F.2d 113; Hamilton Gas Co. v. Inland Gas Corp. (Piney Oil & Gas Co. v. Inland Gas Corp.), 6 Cir., 1939, 102 F.2d 131; In re American Fuel & Power Co., 6 Cir., 1941, 122 F.2d 223; Columbia Gas & Electric Corp. v. United States, 6 Cir., 1945, 151 F.2d 461; Columbia Gas & Electric Corp. v. United States, 6 Cir., 1946, 153 F.2d 101; In re Inland Gas Corporation, 6 Cir., 1951, 187 F.2d 813; In re Inland Gas Corporation, 6 Cir., 1953, 208 F.2d 13; In re Inland Gas Corporation, 6 Cir., 1954, 211 F.2d 381; In re Inland Gas Corporation, 6 Cir., 1954, 217 F.2d 207; In re Inland Gas Corporation, 6 Cir., 1957, 241 F.2d 374; In re Inland Gas Corporation, 6 Cir., 1959, 262 F.2d 510, and In the Matter of Inland Gas Corporation et al., 6 Cir., 1960, 275 F.2d 509.

If we make allowance for the time during which the progress of reorganization efforts were necessarily suspended, awaiting determination of questions involved in this mass of litigation, perhaps the prolonged period from the beginning to the end of it does not seem so amazing. Moreover, it should not be overlooked that during all this time the operations of Inland were managed and carried on by the Trustee so successfully and so profitably to the creditors that in the end we find a solvent reorganized company.

I am now confronted with numerous claims for allowances for compensation for services and reimbursement of expenses, aggregating $1,726,453.76 (see summary attached to the Commission's report) a large number of which involve claims for allowances in addition to those previously made. The problem presented has frequently been referred to as one of the most "perplexing tasks which falls to the lot of a District Judge". Silver v. Scullin Steel Co., 8 Cir., 98 F.2d 503, 506.

On July 6, 1960, I entered an order directing that all applicants for claims for allowances for services rendered in the above proceedings and for reimbursement for expenses be filed in the office of the Clerk on or before October 3, 1960, and in the same order provided for a hearing of all such applications before the Court beginning on October 31, 1960. The hearing was duly held on October 31, November 1 and November 2, 1960, and the testimony presented has been transcribed by the Court Reporter and is filed as a part of this record.

At the conclusion of the hearing the Court requested the Securities and Exchange Commission to consider and file its report and recommendations upon the applications so presented and granted leave to the applicants to file briefs in support of their respective claims within 15 days after the filing of the Commission's report. The report of the Commission was filed on March 13, 1961, and briefs have since been filed by numerous applicants in support of their respective applications, all of which have been considered by the Court.

The Securities and Exchange Commission has been a party and an active participant in these proceedings almost from the beginning, and I recognize that the recommendations of its counsel, though purely advisory as an aid to the judge in performing his difficult task, they nevertheless represent the expert opinion of a disinterested agency, experienced in corporate reorganization proceedings and are entitled to great weight. After all, however, the ultimate responsibility for determining fair and reasonable compensation for services rendered rests upon the Court. Sections 242 and 243, Chapter X of the Bankruptcy Act, 11 U.S.C.A. §§ 642 and 643; In re Detroit International Bridge Co., 6 Cir., 111 F.2d 235, 237; In re Mt. Forest Fur Farms of America, 6 Cir., 157 F.2d 640; Finn v. Childs Co., 2 Cir., 181 F.2d 431.

The applications for allowances are considered in the following order:

*Milbank, Tweed, Hope & Hadley,* counsel for Vanston Committee, applied for additional compensation in the sum of $65,000 and for additional expenses in the sum of $9,396.05. I am of the opinion that for the reasons stated in the report of the Commission, its recommendation (pp. 47–53) for allowance of the additional sum of $40,000 as compensation for services and $8,855.34 for additional expenses should be and is approved.

*Edward J. Caughlin,* individually and as committee for the protection of holders of 7% Ten-Year Inland Debentures, applied for compensation for services in the sum of $17,500 and reimbursement of expenses in the sum of $7,632.42. I am of the opinion that for the reasons stated in the report of the Commission (pp. 54–58) its recommendation for allowances to this applicant in the sum of $9,000 for services and $6,470.79 for expenses should be and is approved.

*Morgan, Lewis & Bockius,* attorneys for Edward J. Caughlin, individually and as a committeeman for holders of 10-year 7% Inland Debentures, through Anthony H. Whitaker, a member of the firm, applied for compensation for services in the sum of $60,000 and $1,421.77 for reimbursement of expenses. I am of the opinion that for the reasons stated in the report of the Commission (pp. 58–63) its recommendation for allowance to this applicant in the sum of $30,000 for services and $921.77 for expenses should be and is approved.

*Bradley & Bradley,* associate counsel for Edward J. Caughlin, applied for compensation for services in the sum of $12,-500. The Commission recommends allow-

ance of $6,000. In view of the limited nature and extent of the services rendered, as shown by the report of the Commission (pp. 64–65), I am of the opinion that reasonable compensation therefor is the sum of $2,500, for which allowance will be made accordingly.

*Charles J. Gregory,* member of the so-called "Paul Committee" for Inland Debentures and Kentucky Debentures for compensation and reimbursement of Out-of-Pocket Expenses, applied for compensation in the sum of $5,000 for services and in the sum of $667.40 for personal expenses and the further sum of $9,561 balance owing by the Committee to the First National City Trust Company for the Committee's obligation resulting from its borrowing on June 5, 1931 to meet Committee expenses.

The Commission recommends allowance to Charles J. Gregory in the sum of $2,000 for services, the further sum of $617.40 for expenses, and the further sum of $9,561 to cover the Committee's obligation to the First National City Trust Company and to be paid directly to the First National City Trust Company.

I am of the opinion that for the reasons stated in the report of the Commission (pp. 65–69) its recommendation for the allowance in the sum of $2,000 to Charles J. Gregory for services, and the sum of $617.40 for his expenses, and the further sum of $9,561 for the balance owing by the Committee to the First National City Trust Company to be paid directly to the First National City Trust Company for the Committee's obligation resulting from its borrowing on June 5, 1931 to meet Committee expenses should be and is approved.

*Willkie, Farr, Gallagher, Walton & Fitzgibbon,* and *John L. Smith,* deceased, attorneys for Protective Committee for Holders of Inland and Kentucky Debentures and for New York Trust Company, Indenture Trustee, jointly applied for additional amount for services in the sum of $75,000 and for additional expenses in the sum of $8,281.81. I am of the opinion

that for the reasons stated in the report of the Commission (pp. 69–78), its recommendation should be approved and the allowance of the additional sum of $35,-000 for services to the firm of Willkie, Farr, Gallagher Walton & Fitzgibbon and $15,000 for services to the executor of the estate of John L. Smith, deceased, and for $7,330.30 for expenses should be and is approved.

*Paul E. Kern* applied for reimbursement of expenses and for advances and payments to his counsel and others in the sum of $173,966.20. For the reasons set out in the report of the Commission (pp. 78–95) I am of the opinion that this application should be and is denied.

*Rembar, Zolotar & Leavy* and *Middleton, Seelbach, Wolford, Willis & Cochran,* have jointly applied for an allowance of $54,000 as compensation from the estate. For the reasons set out in the report of the Commission (pp. 95–98) I am of the opinion that the recommendations of the Commission should be approved and allowances of the sum of $9,000 to Rembar, Zolotar & Leavy, and the sum of $2,000 to Middleton, Seelbach, Wolford, Willis & Cochran should be and are approved.

*Security-Columbian Banknote Company, J. H. Cohn & Company* and *Touche, Ross, Bailey & Smart* filed separate applications for services rendered under their employment by Paul E. Kern. For the reasons set out in the report of the Commission (pp. 98–99), I am of the opinion that these applications for allowances should be and are each denied.

*Green Committee for holders of American Fuel and Power Company 7% Gold Notes* by and through its Chairman Thomas Keogh of the present Committee, has filed application for allowance for expenses in the sum of $56,844.72. For the reasons set out in the report of the Commission (pp. 100–103) I am of the opinion that the recommendation of the Commission for the allowance to this applicant in the sum of $36,256.08 should be and is approved.

*Thomas Keogh,* now Chairman of what is known as the "Green Committee" for

holders of American Fuel and Power Company 7% Gold Notes has filed application for compensation for services in the sum of $10,000. For the reasons set out in the report of the Commission (pp. 104–106) I am of the opinion that its recommendation for the allowance of the sum of $7,500 to this applicant should be and is approved.

*Oscar S. Rosner,* counsel for the Green Committee representing noteholders of the American Fuel and Power Company has heretofore been allowed and paid the sum of $190,000 on and in part of compensation for his services. He now applies for the sum of $600,000 as compensation and $739.09 as expenses in addition to that previously allowed. The Commission's report sets out in a general way the nature and extent of the services rendered by Mr. Rosner and recommends that he be allowed the sum of $500,000 in addition to the amount previously paid. After carefully reviewing the Commission's report and recommendations, and without questioning the accuracy of the Commission's summary of Mr. Rosner's services, in view of the fact that a large part of his services were in cooperation and collaboration with other counsel, I feel impelled to the conclusion that the allowance recommended by the Commission of $500,000, in addition to the $190,000 heretofore paid, substantially exceeds fair and reasonable compensation allowable under the Bankruptcy Act. My opinion is that as fair and reasonable compensation for his services Mr. Rosner is entitled to the additional sum of $250,000, making his total allowance the sum of $440,000. The additional allowance to Mr. Rosner for $250,000 for services, and $737.09 for expenses should be and is approved.

*Lilienthal Committee* for noteholders of American Fuel and Power Company seeks compensation for services of the Committee and its attorneys Cadwalader, Wickersham & Taft for expenses in the sum of $31,202.35 and for reasonable compensation, in an amount not specified, for their services. The Commission recommends (pp. 118–125) the allowance for compensation of the Committee and its attorneys Cadwalader, Wickersham & Taft jointly in the sum of $13,000 for services and in the sum of $3,445.44 for expenses. I am of the opinion that the recommendation of the Commission for the joint allowances of $13,000 to the Committee and its counsel, Cadwalader, Wickersham & Taft for services and in the sum of $3,445.44 for expenses should be approved and they are allowed accordingly.

*Angus W. McDonald,* attorney for Lilienthal Committee has applied for an allowance of $25,000 for his services and $18.84 for expenses. I am of the opinion that the recommendation of the Commission (pp. 125–128) for the allowance of $5,000 for services and $18.84 for expenses should be and is approved.

*Manufacturers Trust Company,* as Trustee under an agreement covering American Gold Notes has applied for an allowance of $5,640 for services performed as Trustee, custodian and registrar, and fees for its counsel Simpson, Thacker & Bartlett. I am of the opinion that the recommendation of the Commission (pp. 129–130) for the allowance of $4,240 to this applicant as compensation for services should be approved and allowed accordingly.

*Chase Manhattan Bank* has applied for compensation for services as Trustee covering Kentucky Sinking Fund Gold Debentures and for the services of its counsel Mudge, Stern, Baldwin and Todd. I am of the opinion that the recommendation of the Commission (pp. 130–132) that this applicant be allowed the sum of $4,600 as compensation for its services should be approved and same is allowed accordingly.

*The Hanover Bank,* depository of Inland Sinking Fund Bonds and Kentucky Sinking Fund Bonds. It appears on pages 133 and 134 of the Commission's report that it recommends allowances of $3,824.50 to the Hanover Bank as depository for Inland Sinking Fund Bonds and the further sum of $5,418.75 as depository for Kentucky Sinking Fund Bonds.

I am of the opinion that the recommendations of the Commission for such allowances should be and are approved.

*First National City Trust Company*, depository for Inland 7% Sinking Fund Debentures and Kentucky 6½% Sinking Gold Debentures. It appears from pages 135, 136, 137 and 138 of the Commission's report that the Commission recommends the allowance to the First National City Trust Company as depository for Inland 7% Sinking Fund Debentures in the sum of $4,432.71 and for its services as depository of Kentucky 6½% Sinking Gold Debentures the further sum of $2,974.82. I am of the opinion that the recommendation of the Commission for the allowances above stated in the total sum of $7,407.53, of which the sum of $510 is for expenses, should be and is approved.

*Wells Fargo Bank American Trust Company* of San Francisco, California. It appears from pages 138 and 139 of its report, the Commission recommends the allowance of $11,032.51 to the Wells Fargo Bank American Trust Company of San Francisco, California, for its services as depository of American 7% Gold Notes including the services of its counsel, Heller, Ehrman, White & McAuliffe. I am of the opinion that the recommendation of the Commission for the total allowance of $11.032.51 should be and is approved.

*Irving Trust Company* of New York, depository of American 7% Convertible Gold Notes. It appears from page 140 of its report, the Commission recommends an allowance to Irving Trust Company of New York in the sum of $1,931.85, including the services of its counsel, Gifford, Woody, Carter & Hays. I am of the opinion that the recommendation of the Commission for this allowance of $1,931.85 should be and is approved.

*Ben Williamson, Jr.,* Trustee of Inland Gas Corporation, Trustee of Kentucky Fuel Gas Corporation and as agent for American Fuel and Power Company. Since the services of Mr. Williamson as Trustee for Kentucky Fuel Gas Corporation and for his services in the operation and liquidation of the American Fuel and Power Company have been completed, he applies for a final allowance for his services in the sum of $100,000 as Trustee for Kentucky Fuel Gas Corporation and the further sum of $100,000 for services rendered in the management, operation and liquidation of the subsidiaries of the American Fuel and Power Company. Notwithstanding the views expressed in the report of the Commission, I am of the opinion that the amounts applied for constitute fair and reasonable compensation for the above-mentioned services, the nature and extent of which services are set out in the Commission's report (pp. 29–33). The allowances of $100,000 to Ben Williamson, Jr., as Trustee for Kentucky Fuel Gas Corporation and the further sum of $100,000 for his services in the management, operation and liquidation of the subsidiaries of the American Fuel and Power Company should be and are approved.

No application has been filed by Mr. Williamson for a final allowance for his services as Trustee for Inland Gas Corporation for the obvious reason that the consummation of the Plan of Reorganization has not been completed, but, as stated in the Commission's report, he has indicated that when his work is completed he contemplates asking for a final allowance in an amount not to exceed the further sum of $75,000. A summary of services yet to be performed is set out on page 3 of his petition.

*Selden S. McNeer*, attorney for Ben Williamson, Jr., Trustee for Inland Gas Corporation and Kentucky Fuel Gas Corporation. Mr. McNeer has applied for a final allowance of $130,000 for services rendered in these proceedings since his appointment on June 19, 1952, in addition to allowances previously paid to him in the amount of $170,000. In what appears to me to be a carefully prepared summary covering the nature and extent of Mr. McNeer's services as attorney for the Trustee of Inland and Kentucky, the Securities and Exchange Commission concludes its report with the following recommendations: "It is our recom-

mendation that since McNeer's services are substantially completed, his drawing account of $500 a month be discontinued and that he receive an additional $25,000 as compensation for the year 1960, plus a final allowance of $40,000 in full payment for his services rendered. This allowance should include normal services to be rendered in closing the estate. If he is called upon by the Trustee to perform any extraordinary services before the estate is closed he should be permitted to petition for an additional allowance for such services. Our recommended allowance, which would aggregate $65,000, when added to the $170,000 which he has already received totals $235,000. We believe this to be fair and reasonable."

In his opinion in Finn v. Childs Co., supra [181 F.2d 438], Circuit Judge Clark, after pointing out that the recommendations made by S.E.C. are not "mere casual conjectures" but are "recommendations based on closer study than a district judge could ordinarily give to such matters", said:

"We agree with District Judge Kirkpatrick's apt statement 'that the Commission is about the only wholly disinterested party in the proceeding and that, while it may not be entirely familiar with "the problems of making both ends meet in a law office" referred to by counsel, its experience has made it thoroughly familiar with the general attitude of the Courts and the amounts of allowances made in scores of comparable proceedings.' "

With undiminished high regard for the integrity and eminent professional skill and competence of Mr. McNeer, I feel impelled to agree with the recommendation of the Commission, with the addition of monthly withdrawals to and including April 30, 1961. Since it appears from the report of the Commission that Mr. McNeer's services are substantially completed, in my opinion his drawing account of $500 a month should be discontinued as of April 30, 1961, and he is entitled to an additional allowance of $65,000 plus the amount paid and to be paid on his drawing account to and including April 30, 1961, in full payment for his services rendered including normal services to be rendered in closing the estate. If called upon by the Trustee to perform any extraordinary services before the estate is closed, he may apply for additional allowance for such services.

*Clinton M. Harbison,* Trustee for American Fuel and Power Company. The services of Mr. Harbison as Trustee, which began on the date of his appointment in May 1940 appear to have been completed and he has applied for a final allowance of $35,000 in addition to six ad interim allowances previously paid aggregating $35,000. I am of the opinion that the recommendation of the Commission (pp. 42–44) that Mr. Harbison be allowed the additional sum of $35,000 should be and is approved.

*John L. Davis,* attorney for Clinton M. Harbison, Trustee of American Fuel and Power Company. The services of Mr. Davis, as attorney for the American Trustee since May 11, 1940, have been completed and he has applied for final allowance of $50,000 in addition to six ad interim allowances previously paid aggregating $35,000. I am of the opinion that the recommendation of the Commission (pp. 44–46) that Mr. Davis be allowed the additional sum of $50,000 should be and is approved.